TIN CUP PASS LIMITED PARTNERSHIP, Plaintiff-Appellant, v. PAT DANIELS *et al.*, Defendants-Appellees (Pat Daniels *et al.*, d/b/a The Lodge at Tin Cup Pass and d/b/a D&M, Inc., Defendants).

Second District   No. 2—89—0752

Opinion filed March 29, 1990.

Jerome Marvin Kaplan and Marc K. Schwartz, both of Batler & Schwartz, of Buffalo Grove, for appellant.

Richard G. Larsen, of Myler, Ruddy & McTavish, of Aurora, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Tin Cup Pass, Ltd. (Tin Cup Pass), appeals from an order of the circuit court of Kane County vacating a portion of a prior order assessing liability against defendants, Pat Daniels and William Mandell, individually for past-due rent and expenses under a written lease.

Plaintiff raises three issues on appeal: (1) whether defendants are personally liable under section 3.20 of the Business Corporation Act of 1983 (Ill. Rev. Stat. 1987, ch. 32, par. 3.20), which imposes personal liability on those who assume to exercise corporate powers without the authority to do so; (2) whether plaintiff is estopped from asserting liability against defendants as individuals; and (3) whether defendants demonstrated a *bona fide* attempt to incorporate thereby creating a *de facto* corporation.

The facts of this case are not in dispute. In their memorandum of law to the trial court on the issue of personal liability, defendants stated that the parties agreed to the facts in this case. Further, plaintiff's reply memorandum does not dispute the factual portion of defendant's memorandum. We further note that the parties do not disagree as to the facts on appeal.

Defendants' memorandum states that in December 1986 Pat Daniels, John Daniels and William Mandell began negotiations to purchase a tavern and restaurant business in St. Charles, Illinois. Pat Daniels was to provide the capital for the venture, and John Daniels was to be the general manager of the business. The landlord of the premises was a land trust, with the Howard Realty Group, Inc. (Howard), plaintiff's predecessor, as agent for the owner of the land trust. Jeff Howard of Howard and John Daniels negotiated the lease terms.

While the sale of the business and negotiation of the lease were proceeding, neither the seller of the business nor the landlord contemplated personal guarantees from Pat Daniels and William Mandell. Defendants intended to file articles of incorporation under the name "D&M, Inc." (D&M). Although D&M had not yet been incorporated on January 18, 1987, and the articles of incorporation had not been filed, defendants signed the lease on behalf of D&M as follows:

"Tenant: D&M, Inc.

By: ____/S/_____
President Pat Daniels

By: ____/S/_____
Secretary Bill Mandell"

Jeff Howard knew that D&M had not yet been incorporated when they signed the lease. Defendant Mandell never became involved in the business and merely signed at the request of Jeff Howard.

On February 11, 1987, defendants' attorney filed the articles of incorporation for D&M with the Secretary of State. An initial investigation by defendants' attorney indicated that there was not another Illinois corporation with a name similar to D&M which would prevent incorporation under that name. However, the Secretary of State's office returned the articles of incorporation because the name "D&M, Inc.," was already in use by another Illinois corporation. Immediately thereafter new articles of incorporation were filed under the name of The Lodge at Tin Cup Pass, Inc. (Lodge). Defendants checked with the landlord to see if they could use that name because it is similar to the name of the property, Tin Cup Pass. The Lodge was duly incorporated on March 5, 1987. Although defendants had taken possession of the property on February 17, 1987, they did not open for business until after the Lodge was incorporated. In August 1987, Howard assigned the lease to plaintiff.

On December 6, 1988, plaintiff filed the instant complaint against the defendants, d/b/a The Lodge at Tin Cup Pass and d/b/a D&M, Inc., alleging that defendants failed to pay $12,389.48 in rent. Plaintiff subsequently amended its complaint to include a count for forcible entry and detainer. It later sought an addendum in the amount of $35,518.89, which was granted. On May 10, 1989, the court entered an agreed order assessing liability in the amount of $35,515.89 against the Lodge and D&M, and against defendants individually. The agreed order further stayed execution of the judgment against defendants until the court could determine whether they were personally liable.

In their written memorandum of law, defendants argued that they should not be held personally liable because they were unaware of defects in the articles of incorporation for D&M; plaintiff should be estopped from denying the corporation's existence when Howard knew that D&M had not been incorporated when the lease was signed; and as defendants made a good-faith effort to incorporate, they were acting as agents of a *de facto* corporation. Plaintiff argued

that defendants were personally liable because the D&M corporation was never formed and defendants signed the lease. Plaintiff also argued that it was not estopped to deny the existence of the corporation and that defendants never made a good-faith effort to incorporate. Although the reasons for the decision are not contained in the record, the trial court found that defendants were not personally liable for the debt and vacated the judgments against them.

On appeal, plaintiff contends that the trial court erred in vacating the judgments against defendants as individuals. In support of this contention, plaintiff cites section 3.20 of the Business Corporation Act (Act), which states:

"All persons who assume to exercise corporate powers without authority so to do [sic] shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." (Ill. Rev. Stat. 1987, ch. 32, par. 3.20.)

Plaintiff argues that the plain language of the statute clearly imposes personal liability on those who assume to exercise corporate powers. According to plaintiff, because D&M was never incorporated, defendants acted without authority when they signed the lease and should therefore be held personally liable for the debts incurred as a result of the lease.

Our supreme court has held that the previous version of section 3.2 renders an individual who conducts the ordinary affairs of a business in the name of a nonexistent corporation personally liable on a contract made in connection with the business. (*H.F. Philipsborn & Co. v. Suson* (1974), 59 Ill. 2d 465, 470, 322 N.E.2d 45.) However, whether personal liability will be imposed upon a promoter who makes a contract for the benefit of a proposed corporation depends upon the intent of the parties. (*Suson*, 59 Ill. 2d at 470-71, 322 N.E.2d at 49.) A promoter of a corporation is one who actively assists in creating, projecting and organizing a corporation. *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 209, 371 N.E.2d 1228; see *Stap v. Chicago Aces Tennis Team, Inc.* (1978), 63 Ill. App. 3d 23, 26, 379 N.E.2d 1298.

It is clear that defendants were promoters of the corporation. There can be no doubt that they were involved in the creation and organization of the corporation. Consequently, as they entered into the lease with plaintiff as promoters, we must look to the intent of the parties in determining whether defendants are to be held individually liable under the lease.

The parties agree that Jeff Howard, who signed the lease on behalf of plaintiff's predecessor, knew that a corporation was to be

formed, *albeit* under the name of D&M, Inc., and not the Lodge at Tin Cup Pass, Inc., the corporation's ultimate name. The lease itself names D&M, Inc., as the lessee, and defendants signed in their capacities as corporate officers and not as individuals. No individual guarantees were sought by the lessor. It was clearly the intent of the parties to the lease to create a lease with a corporation as the lessee.

■■ While it is true that the corporation was not ultimately named D&M, Inc., as stated in the lease, such a minor discrepancy does not affect our determination that the parties intended to make the proposed corporation the lessee. There is no evidence that the corporate entity contemplated by the parties changed in any significant respect other than its name. As such, we find the fact that the corporation was eventually incorporated under a name other than that identified in the lease to be of no significant consequence in this case.

We are further persuaded that the parties intended to create a lease agreement with the corporation as the lessee as plaintiff subsequently treated the lease as though the corporation, the Lodge, was the lessee. Furthermore, the corporation ratified the lease by recognizing and treating it as valid. (See *Suson*, 59 Ill. 2d at 472, 322 N.E.2d at 49.) The actions of the parties rendered the lease as valid as if the requisite corporate authority had existed when it was entered into. As our resolution on this basis is dispositive of the case, we need not examine the remaining issues addressed by the parties.

For these reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

INGLIS and GEIGER, JJ., concur.