CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Plaintiff-Appellee, v. JOHN MOLINAROLO, Defendant-Appellant.

Fifth District    No. 5–91–0058

Opinion filed January 8, 1992.

Harold B. Culley, Jr., of Raleigh, for appellant.

Craig S. Burkhardt and Liesl G. Smith, both of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Central Illinois Public Service Company (CIPS) brought this action to recover $12,188.25 allegedly due under deferred-utility-payment agreements with three businesses which are partially owned by John Molinarolo. Molinarolo denies personal liability and claims that he signed the agreements in a representative capacity. The trial court found John Molinarolo personally liable on the deferred-payment agreements and rendered judgment against him. Molinarolo appeals. We affirm.

We note parenthetically that this case was decided by the trial court based on the stipulation and briefs submitted by the parties.

Molinarolo is an officer of the Muddy Supply Corporation and owns one-third of its corporate stock. Muddy Supply Corporation owns Village Laundry and Gateway Motor Inn. In March 1989, the three businesses fell into arrears in payments to CIPS. Deferred-payment agreements as to the three businesses were entered into, and each of them provided that the arrearages would be paid over a four-month period. Each of the payment agreements was signed "John

Molinarolo, Treas." The arrearages were not paid, and on November 27, 1989, CIPS filed a complaint against John Molinarolo.

The first issue on appeal is whether the trial court erred in refusing to acknowledge that CIPS made a judicial admission that the payment agreements were signed in a representative capacity.

■ In his answer to CIPS' complaint, Molinarolo made admissions and denials to each of the averments. Under a separate paragraph entitled "Further Answering," he stated:

"The Deferred Payment Agreements *** clearly indicate that JOHN MOLINAROLO signed said Deferred Payment Agreements as a corporate officer and not as an individual in that the documents were signed 'John Molinarolo, Treas.'; the responsibility, if any, for said accounts is and are corporate obligations and are not the responsibility of JOHN MOLINAROLO individually.

WHEREFORE, the Defendant, JOHN MOLINAROLO, would ask that said Complaint be dismissed with prejudice and for his costs."

Molinarolo argues that because he asserted new matter by way of defense in his answer, and because a reply was not filed by the plaintiff (Ill. Rev. Stat. 1989, ch. 110, par. 2—602), the new allegations were admitted (Ill. Rev. Stat. 1989, ch. 110, par. 2—610). While defendant aptly refers to those sections of the Code of Civil Procedure which state these general propositions, his application of these sections to the facts at bar is inappropriate.

The complaint in this case seeks to hold defendant personally liable on the deferred-payment agreements. The complaint itself negates the affirmative defense such that no reply was necessary. It is well settled that where a complaint negatives the allegations of an answer or subsequent pleading, a reply is unnecessary. (*Adams v. Zayre Corp.* (1986), 148 Ill. App. 3d 704, 499 N.E.2d 678; *Shive v. Shive* (1978), 57 Ill. App. 3d 754, 373 N.E.2d 557; see also 134 Ill. 2d R. 136(b).) We hold that the trial court did not err in refusing to find that CIPS admitted the allegation that Molinarolo did not sign the agreements in an individual capacity.

The other issue for our review is whether the trial court erred in concluding that Molinarolo is personally liable for the debt. With the exception of the name of the business and the dollar figures, each of the deferred-payment agreements provides as follows:

**CENTRAL ILLINOIS PUBLIC SERVICE COMPANY**

**DEFERRED PAYMENT AGREEMENT**

NAME. _Mulley Supply Corp_ . _16.190 300.0282u_

ADDRESS. Mail _____ n Service _Mulley_

_Mulley_ _Ic_ _'6=965_

TELEPHONE. Home _____ t Office _____

Social Security No. _____ ; Drivers License No. _____ ; Other Type of ID and No. _____

EMPLOYMENT· _____

ADDRESS _____

As an inducement for Central Illinois Public Service Company, hereinafter referred to as "Company", to furnish electric and/or gas service, I, _Mulley Supply Corp (by nolmann)_, hereby agree to pay any and all bills not presently paid for gas and/or electric service in accordance with the terms and conditions of this agreement.

1. The Customer and/or Applicant agrees to pay all future utility bills on or before the due date shown on the utility bill rendered by Company.

2. A residential customer shall have the opportunity to enter into this DEFERRED PAYMENT AGREEMENT only at the discretion of Company if said customer has failed to make payment under such a DEFERRED PAYMENT AGREEMENT during the past twelve (12) months.

3. A non-residential customer and all applicants for gas and/or electric service may have the opportunity to enter into a DEFERRED PAYMENT AGREEMENT only at the discretion of the Company.

4. The Customer and/or Applicant agrees to now pay $ _419.73_ of the total amount past due which is $ _972.34_ .

5. The balance of the amount past due of $ _392.61_ shall be paid at the rate of $ _05.66_ per month for the next succeeding _4_ months. A late payment charge equal to one and a half (1½) percent will be assessed each month on the unpaid balance under this deferred payment agreement. Payments received by the Company from any source for the benefit of the Applicant/Customer may be applied toward the balance due. All monthly payments shall be due as shown on the succeeding utility bill rendered by Company.

6. If the Customer or Applicant defaults on any of the terms or conditions of this DEFERRED PAYMENT AGREEMENT, Company shall have the right to discontinue service pursuant to Section 280.130 of the Illinois Commerce Commission 83 Illinois Administrative Code 280.

7. Company also retains all remedies which may be available under the laws of the State of Illinois and it is understood that any remedy stated in this agreement is not an exclusion remedy.

8. Any failure of Company to avail itself of any remedy it may have for the breach of any of the terms and conditions of this agreement shall not constitute a waiver of any subsequent breach of this agreement.

9. This written instrument incorporates the entire agreement between the parties hereto and no other document or oral representations made by or on behalf of Company or the Customer or Applicant are to be considered a part of this agreement between the parties.

_____ _Applicant or Customer_

Date _March 11, 84_

Accepted CENTRAL ILLINOIS PUBLIC SERVICE COMPANY

By _____

Date _5/14/84_

■ The primary goal in construing a contract is to give effect to the intention of the parties involved. Where no ambiguity in the terms of the agreement exists, the parties' intent must be determined solely from the language used. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888.) The agreement should be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67, 294 N.E.2d 272, 273-74.) To interpret the agreements at bar, we look to the governing statutory provision of section 3—403(2) of the Uniform Commercial Code:

"An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity ***." Ill. Rev. Stat. 1989, ch. 26, par. 3—403(2).

In the instant case, the deferred-utility-payment agreements name the businesses which Molinarolo claims he represents. Thus, the first prong of section 3—403(2)(a) suggests that Molinarolo signed the agreements in a representative capacity. Moving to the second prong of section 3—403(2)(a), the signature line contains Molinarolo's signature followed by the designation "Treas." When an agent signs a document and indicates next to his signature his corporation affiliation, then, absent evidence of contrary intent in the document, the agent is not personally bound. *Knightsbridge Realty Partners, Ltd-75 v. Pace* (1981), 101 Ill. App. 3d 49, 53, 427 N.E.2d 815, 819.

■ These principles suggest that Molinarolo signed the agreements in a representative capacity. However, in order to fairly interpret the agreement, we need to examine the language of the entire instrument. (*Tatar*, 54 Ill. 2d at 67, 294 N.E.2d at 273-74.) Contained within the body of the deferred-utility-payment agreements, next to the name of the businesses, is John Molinarolo's name in parentheses. For instance, the agreement involving the Muddy Supply Corporation provides:

"As an inducement for Central Illinois Public Service Company, hereinafter referred to as "Company", to furnish electric and/ or gas service, I, <u>Muddy Supply Corp</u> (<u>John Molinarolo</u>),

hereby agree to pay any and all bills not presently paid for gas and/or electric service in accordance with the terms and conditions of this agreement."

"[W]here the language in the body of the document conflicts with the apparent representation by the officer's signature, an issue of fact as to the agent's intent arises ***." (*Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 316, 472 N.E.2d 411, 413, citing *Knightsbridge*, 101 Ill. App. 3d at 53, 427 N.E.2d at 819.) The deferred-utility-payment agreements name the businesses represented, but it is not clear whether Molinarolo signed the agreements in a representative capacity. Ill. Rev. Stat. 1989, ch. 26, pars. 3—403(2)(a), (b).

■ As noted at the outset of this opinion, the parties agreed to allow the trial judge to decide the case based solely upon the stipulation of facts and the briefs submitted by the parties. The stipulation of facts does not in any way delve into what the intent of the parties was when the agreements were entered into. In addition, the briefs submitted to the trial court did not enlighten the court as to the parties' intentions. Because the instruments are ambiguous as to the signer's obligation on the debt, it would have been proper to elicit parol evidence to discern the parties' intentions as to whether Molinarolo signed in his personal capacity or as a representative. Molinarolo argues on appeal that because the agreements do not fit precisely into any of the subsections of section 3—403, extrinsic evidence would have been admissible to determine the capacity in which he signed the agreements. Molinarolo concedes that he did not introduce any extrinsic evidence on the issue of capacity because he wanted to take advantage of the alleged admission resulting from CIPS' failure to reply to his answer.

It is axiomatic that there can be no error in failing to receive evidence that was not offered. (*Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 452 N.E.2d 804.) While Molinarolo claims that the trial court erred in not considering parol evidence, the record reveals that Molinarolo made no offer of proof regarding what the substance of the alleged excluded testimony would be. An offer of proof may have removed the ambiguity, but none was made; therefore, the issue was not properly preserved for review. (See *Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.* (1975), 61 Ill. 2d 6, 329 N.E.2d 228.) The stipulation of facts and the documents included in the record submitted to the judge without any further evidence allowed the conclusion made, namely, that Molinarolo signed in an individual capacity. Under the circum-

stances and in the absence of such an offer, we cannot conclude that reversible error occurred.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GOLDENHERSH, P.J., and RARICK, J., concur.