# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Carollo v. Irwin*, 2011 IL App (1st) 102765**

| | |
|---|---|
| Appellate Court Caption | DONNA CAROLLO, f/k/a Donna Syracusa, Plaintiff-Appellee, v. LAWRENCE IRWIN, REALTY CONSULTING SERVICES, INC., and DL REALTY PARTNERSHIP, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-2765 |
| Filed | September 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to enforce an agreement to settle an underlying sexual harassment complaint and the litigation to dissolve a partnership, the trial court properly entered summary judgment awarding plaintiff the additional $30,000 due plaintiff if a property owned by the partnership did not sell, since the articles of agreement for deed for the property showing the buyer to be an unformed limited liability company did not constitute a sale. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-M3-0670; the Hon. Sandra Tristano, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Office of C. Corey S. Berman, Ltd., of Chicago (C. Corey S. Berman, of counsel), for appellants.

ML LeFevour & Associates, of Des Plaines (Mark L. LeFevour, of counsel), for appellee.

Panel

JUSTICE PUCINSKI delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Sterba concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Donna Carollo, entered into a settlement agreement with her former business partner, defendant Lawrence Irwin, and the partnership, defendant DL Realty Partnership (DL Realty), in settlement of claims she asserted against defendants for sexual harassment. That settlement agreement provided for an additional payment of $30,000 if a certain property owned by DL Realty did not sell by December 31, 2008. Defendants argue that the property sold when articles of agreement for deed were executed on December 31, 2008. The agreement indicated the buyer was an unformed limited liability company (the LLC) and was signed by an individual on behalf of the unformed LLC. The agreement provided for certain installment payments and payments of interest, as well as an initial closing, prior to the final closing and final payment of the balance of the purchase price, when the title to the property would transfer. It is undisputed that no payments were ever made and no closing occurred. The circuit court granted summary judgment in favor of plaintiff, finding that no sale occurred, and awarded her the additional payment under her settlement agreement with defendants.

¶ 2    We affirm and hold: (1) there was no sale because (a) the execution of the articles of agreement did not constitute a sale but merely an executory contract to sell property and did not transfer legal title and (b) there was no sale after the execution of the articles of agreement because no payments were ever made and no closing was held, which were conditions precedent of the transfer of title to the property. We also hold: (2) the contract in any event was not enforceable because there was no buyer bound by the contract where (a) the LLC was never subsequently formed and never ratified the contract or authorized Scott Mason to enter into it, and (b) Scott Mason cannot be individually liable on the contract because he is statutorily protected under the Limited Liability Company Act (805 ILCS 180/10-10 (West 2006)).

¶ 3                                    BACKGROUND

¶ 4        The amended complaint alleges that plaintiff, Donna Carollo, formerly known as Donna Syracusa, worked for defendant Lawrence Irwin and was a partner with Irwin in defendant DL Realty Partnership. Plaintiff filed complaints of sexual harassment against Irwin with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights. Plaintiff also filed a separate lawsuit for dissolution of DL Realty Partnership. Plaintiff and defendants agreed to settle both the sexual harassment complaint and the dissolution of partnership litigation, and executed a settlement agreement on October 18, 2007. Pursuant to the terms of the settlement agreement, defendants made certain guaranteed payments to plaintiff.

¶ 5        DL Realty owned a property referred to as the River Oaks apartment complex, which it had been trying to sell for about two years, and for more than eight months before plaintiff and defendants entered into the settlement agreement. Defendants wished to obtain a selling price of $4.2 million. Pursuant to paragraph 3 of the settlement agreement, plaintiff was also entitled to an additional payment of $30,000 if the River Oaks property either did not sell on or before December 31, 2008, or sold for an amount in excess of $4.2 million. Paragraph 4 of he settlement agreement further provided:

            "Any Additional Payment that becomes due to [plaintiff] pursuant to Paragraph 3 of this Agreement shall be sent to [plaintiff] within seven (7) days following the earlier of: (i) the closing date of the sale of River Oaks or (ii) December 31, 2008. If River Oaks is sold on or prior to December 31, 2008, Irwin shall provide [plaintiff] with copies of the final sales contract and closing statement within seven (7) calendar days after the closing date."

¶ 6        On or about January 6, 2009, defendants sent plaintiff a copy of articles of agreement for deed dated December 31, 2008, listing the buyer as Cal City Apartments, LLC, "or its Nominee, Assignee, or Transferee." The articles were signed by Lawrence Irwin, on behalf of DL Realty Partnership, and Scott Mason, on behalf of Cal City Apartments, LLC, "an Illinois Limited Liability Company yet to be formed." Cal City Apartments, LLC, was not incorporated at the time of agreement and was not ever subsequently incorporated. Cal City Apartments, LLC, also never provided for a nominee, assignee, or transferee for its interest in the articles of agreement for deed.

¶ 7        The articles provided for an installment payment from the buyer on June 30, 2009, consisting of the difference between the purchase price and the amount of the principal of the seller's mortgage on the property, and 7% accrued interest between December 31, 2008, and June 30, 2009. The final payment of the purchase price and all accrued interest was due at the final closing. The "initial closing" was scheduled to occur on December 31, 2008, but the "final closing" was not scheduled to occur until the date the underlying mortgage was due to be paid. Title would not transfer until the final closing. The articles provided that if the buyer does not make the required payments to the seller on June 30, 2009, as required in paragraph 3(f), the "Agreement shall be terminated and held for naught." Further, paragraph 17 of the articles provided that at the initial closing the buyer shall execute an assignment of all the buyer's right, title and interest to the seller in the event the buyer defaults under the

terms and conditions of the articles.

¶ 8        The articles did not provide for a completed sale and transfer of title to the property prior to December 31, 2008. Rather, the articles provided the following regarding the deed in paragraph 2:

"(a) If the Buyer shall first make all the payments and perform all the covenants and agreements in this Articles of Agreement for Deed as required to be made and performed by said Buyer, at the time and in the manner hereinafter set forth, Seller shall convey or cause to be conveyed to Buyer or his nominee, by a recordable, stamped general warranty deed with release of homestead rights, good title to the premises ***. ***

(b) The performance of all the covenants and conditions herein to be performed by Buyer shall be a condition precedent to Seller's obligation to deliver the deed aforesaid."

¶ 9        The articles further provided that the buyer was entitled to an affidavit of title at any time upon payment of all amounts due under the articles. A DL Realty's attorney, Allen Gabe, who is the attorney who represented DL Realty and drafted the articles of agreement for deed, held the title to the property in trust until the buyer complied with the terms and conditions of the articles.

¶ 10       Additionally, the memorandum of articles of agreement for warranty deed stated that "the terms of said Agreement provide for the future conveyance of said property to the Contract Purchasers at a date certain, provided the Contract Purchasers shall perform in accordance with the terms contained in said Agreement." The record on appeal also includes an affidavit of Allen Gabe, who averred that "[w]hen seller-financing is involved, Articles of Agreement for Deed provide a measure of security to the Seller because title to the Property is not transferred to the Buyer until the Buyer fulfills it payment obligations to the Seller."

¶ 11       Cal City Apartments, LLC, did not make the payment required on June 30, 2009, nor did it make any payments, and it did not perform any of the covenants in the articles of agreement for deed. Scott Mason also did not make any payments and did not perform any of the covenants in the articles of agreement for deed. On July 15, 2009, Gabe sent a letter to Cal City Apartments, LLC, c/o Scott Mason, of notice of default. Neither Cal City Apartments, LLC, nor Scott Mason cured the default.

¶ 12       Defendants refused to pay plaintiff the additional $30,000 under their settlement agreement. Plaintiff filed the instant cause of action for breach of contract. Count I of her first amended complaint was based on breach of the settlement agreement. Count II was for a declaratory judgment that the articles of agreement did not constitute a sale of the property, and that the invalid execution of the articles by a nonexistent LLC did not affect plaintiff's right under the settlement agreement to the additional $30,000 payment. Count III and IV were alternative breach of contract claim and declaratory judgment claims alleging that if the court found the articles of agreement to be an effective sale, plaintiff was still entitled to the additional payment because the property sold for more than $4,350,000.

¶ 13       Plaintiff filed a motion for summary judgment on counts I and II on the basis that there was no sale of the River Oaks property. The court granted summary judgment on counts I and II and awarded plaintiff $30,000 and costs. Counts III and IV were voluntarily dismissed. Defendants appeal the grant of summary judgment and award to plaintiff.

ANALYSIS

Defendants argue that plaintiff was not entitled to summary judgment because a "sale" of the River Oaks property occurred when DL Realty entered into the articles of agreement for deed on December 31, 2008. Summary judgment is appropriate where the pleadings, depositions, affidavits, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002) (citing *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993)); *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007) (citing *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004), and *Gilbert*, 156 Ill. 2d at 517). "Genuine" is construed to mean that there is evidence to support the position of the nonmoving party. *Ralston v. Casanova*, 129 Ill. App. 3d 1050 (1984). "In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986) (citing *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980)). This court reviews a grant of summary judgment *de novo*. *Roth v. Opiela*, 211 Ill. 2d 536, 542 (2004); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

## I. There Was No Sale

### A. There Was Only an Executory Contract for Sale

Defendants argue that a sale occurred by virtue of the articles of agreement for deed executed on December 31, 2008, because under articles of agreement for deed, " 'equitable conversion takes place at the instant a valid and enforceable contract is entered into and *** the buyer at that time acquires an equitable title,' " quoting *Shay v. Penrose*, 25 Ill. 2d 447, 450 (1962). Plaintiff responds with a definition of "sell" from Webster's New World College Dictionary and argues there was no sale because there was no exchange or giving up the property for money or its equivalent.

However, under property law, a contract for the sale of real estate does not constitute a "sale." As our supreme court explained in long-standing precedent:

> "A difference exists in the established law of property between the legal significance of a sale of an interest in land and a contract to sell an interest in land. Whereas the sale of the interest in land results in the actual transfer of the title from the grantor to the grantee, the contract for sale is only an agreement to be performed in the future and which, if fulfilled, results in a sale." *8930 South Harlem, Ltd. v. Moore*, 77 Ill. 2d 212, 219 (1979) (citing *In re Estate of Frayser*, 401 Ill. 364, 373 (1948)).

See also *In re Estate of Martinek*, 140 Ill. App. 3d 621, 627 (1986) (citing *Moore* and holding that there is a clear legal distinction between a sale of interest in land and a contract to sell interest in realty; the former results in the actual transfer of title, whereas the latter is merely

an executory agreement that will result in a sale once performance of the contract is complete).

¶ 20    Thus, it is clear that an actual transfer of legal title, not equitable title, is required for an actual sale. Under property law a contract for the sale of real estate does not transfer legal title and is not equivalent to an actual sale. We hold as a matter of law that the articles of agreement for deed constituted merely an executory agreement for the sale of the property and did not constitute an actual sale.

¶ 21                    B. The Conditions Precedent of the Articles of
                        Agreement for Deed Were Not Fulfilled

¶ 22    We further determine that although equitable conversion occurred upon the signing of the articles of agreement for deed, the conditions precedent to the transfer of legal title were not fulfilled and, therefore, no sale occurred after the execution of the agreement. When the seller enters into a valid and enforceable contract for the sale of realty, the seller continues to hold legal title in trust for the buyer; the buyer becomes equitable owner and holds purchase money in trust for seller, and this equitable conversion occurs at the time the parties enter into an installment contract, as was the case here. *Martinek*, 140 Ill. App. 3d at 628.

¶ 23    However, a sale did not occur after the agreement was executed because the buyer did not fulfill the conditions precedent of the articles of agreement and there was never a transfer of title to the River Oaks property. A "condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform." *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 318 Ill. App. 3d 304, 307 (2000) (citing *McAnelly v. Graves*, 126 Ill. App. 3d 528, 532 (1984)). Conditions precedent in a real estate contract are those that prevent the vesting of title until the condition is complied with. *Koch v. Streuter*, 232 Ill. 594, 597 (1908). " 'Whether an act is necessary to formation of the contract or to the performance of an obligation under the contract depends on the facts of the case.' " *Thorpe*, 318 Ill. App. 3d at 307 (quoting *McAnelly*, 126 Ill. App. 3d at 532). If " 'a condition goes solely to the obligation of the parties to perform, existence of such a condition does not prevent the formation of a valid contract.' " *Thorpe*, 318 Ill. App. 3d at 307 (quoting *McAnelly*, 126 Ill. App. 3d at 532). "The factual analysis hinges on the mutual assent of the parties; if they agree to formation of a binding contract, agreed-on conditions only affect the duty to perform and the contract is valid." *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270, 282 (2007) (citing *Thorpe*, 318 Ill. App. 3d at 307-08, quoting *Edmund J. Flynn Co. v. Schlosser*, 265 A.2d 599, 601 (D.C. 1970)). The intent of the parties to create a condition precedent to the formation of a contract is a question of law where the language in the instrument is unambiguous. *Thorpe*, 318 Ill. App. 3d at 308 (citing *IK Corp. v. One Financial Place Partnership*, 200 Ill. App. 3d 802, 810 (1990)).

¶ 24    The articles of agreement for deed had several conditions precedent to the vesting of title. The articles required an installment payment from the buyer on June 30, 2009, consisting of the difference between the purchase price and the amount of the principal of the seller's mortgage on the property, and 7% accrued interest between December 31, 2008, and June

30, 2009. The "initial closing" was scheduled to occur on December 31, 2008, but the "final closing" was not scheduled to occur until the date the underlying mortgage was due to be paid. The final payment of the purchase price and all accrued interest was due at the final closing. The articles of agreement specifically provided that title would not transfer until the final closing. The articles provided that if the Buyer does not make the required payments to the seller on June 30, 2009, as required in paragraph 3(f), then the "Agreement shall be terminated and held for naught." The installment payment and accrued interest due on June 30, 2009, and final payment of the purchase price and all accrued interest due on the final closing were conditions precedent to the transfer of title to the property. Thus, the conditions were not conditions precedent to contract formation but, rather, conditions precedent to the seller's transfer of title. Prior to the buyer's default, the contract was in effect. See *McAnelly*, 126 Ill. App. 3d at 533 (holding a contract contingency of obtaining necessary permits within 24 months which, if not obtained, would make the lease of no effect, was not a condition precedent to contract formation because neither party had the privilege of revocation prior to the 24-month period ending and no further expression of assent by the parties was necessary to proceed with the lease).

¶ 25    However, even if the contract was initially valid, by its terms the contract was not enforceable if the conditions were not fulfilled. Express conditions precedent in contracts that affect a party's performance are subject to rules of strict compliance. *Regency Commercial Associates, LLC*, 373 Ill. App. 3d at 282 (citing *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 26 (1993)). " '[W]here a contract contains a condition precedent, the contract is neither enforceable nor effective until the condition is performed or the contingency occurs.' " *Perry v. Estate of Carpenter*, 396 Ill. App. 3d 77, 82 (2009) (quoting *Jones v. Seiwert*, 164 Ill. App. 3d 954, 958 (1987), citing *Dodson v. Nink*, 72 Ill. App. 3d 59, 64 (1979)). If the condition remains unsatisfied, the obligations of the parties are at an end. *McKee v. First National Bank of Brighton*, 220 Ill. App. 3d 976, 983 (1991).

¶ 26    Here, even if there was a proper party as the buyer, the conditions precedent were never fulfilled and the contract was terminated. It is undisputed that both the unformed Cal City Apartments, LLC, and Scott Mason never paid any amount owed under the contract as a condition precedent to the transfer of title to the River Oaks property. It is also undisputed that no initial closing occurred, and no final closing with final payment ever occurred. Further, DL Realty's attorney, Allen Gabe, held the title to the property in trust until the buyer complied with the terms and conditions of the articles, and title to the property was never released from trust. After nonpayment of the installment amount, Gabe sent a notice of default to Cal City Apartments, LLC, c/o Scott Mason, and the default was never cured. Thus, due to the failure to fulfill the conditions precedent, the agreement was terminated and the contract for deed was not enforceable. See *Estate of Barth v. Schlangen*, 249 Ill. App. 3d 70, 77 (1993) (holding summary judgment on behalf of a decedent's estate to quiet title to property was proper because the buyer admitted that he had made no installment payments on the contract for the sale of the land). Under the terms of the agreement, the buyer defaulted and the contract was "held for naught." We hold that under these facts the contract was terminated and there clearly was no sale.

¶ 27    According to defendants, however, "[t]his Court and the Illinois Supreme Court have

made clear that a 'sale' occurs at the moment at which the parties enter into their purchase transaction, even if the buyer ultimately defaults." Defendants cite to *Stephen L. Winternitz, Inc. v. National Bank of Monmouth*, 289 Ill. App. 3d 753 (1997), where the defendant bank refused to pay the plaintiff its broker's commission for the sale of equipment when the buyer failed to pay the purchase price and defaulted on the transaction. The defendant bank ultimately sold the equipment at a public auction and refused to pay the plaintiff the commission. The court held that if, on remand, the plaintiff proved that the defendant entered into a valid, binding contract with the buyer, then a "sale" occurred and the plaintiff was entitled to its commission. *Stephen L. Winternitz, Inc.*, 289 Ill. App. 3d at 760.

¶ 28     However, *Winternitz* is easily distinguishable and does not stand for the blanket proposition urged by defendants. *Winternitz* dealt with the issue of a broker's commission upon the production of a ready, willing and able buyer, whereas here the additional payment under the settlement agreement was contingent upon an actual sale. *Winternitz* based its holding that, for purposes of the brokerage commission contract, a "sale" occurred upon the holding of *Fox v. Ryan*, 240 Ill. 391 (1909), also cited by defendants. *Fox* states the rule that a broker is entitled to his or her commission if the purchaser presented enters into a valid, binding and enforceable contract, even though the contract is merely executory, and cannot be deprived of his or her commission if the sale is not completed. *Fox*, 240 Ill. at 396.

¶ 29     Here, we are not presented with a contract for a broker's commission. Plaintiff did not procure the alleged buyer, and had nothing to do with DL Realty's further efforts to sell the River Oaks property after she entered into the settlement agreement with defendants. In fact, plaintiff would not be entitled to the additional payment if the River Oaks property actually sold. Thus, any broker commission analysis has no bearing in this context. Here, the additional payment owed to plaintiff was part of a separate settlement agreement and was conditioned upon whether an actual sale occurred, not whether a valid contract was executed with a ready, willing, and able buyer. Because there was no sale, plaintiff was therefore entitled to the additional payment of $30,000 under the terms of her settlement agreement with defendants.

¶ 30     II. The Contract Was Not Enforceable Because Neither the Unformed LLC
         Nor Scott Mason Could Be Held Liable as a Party to the Contract

¶ 31     Although we have determined that there was no sale, in the interest of clarifying some confusion as to the liability of LLCs and individual promoters on behalf of LLCs, we further hold and explain that under the facts of this particular case the contract was not in any event enforceable. Defendants argue that a party may legally contract with a "to be formed" LLC. Defendants further maintain that Scott Mason would be deemed the buyer if Cal City Apartments, LLC, could not be a proper party to the contract. Plaintiff responds that the unformed LLC did not make any payments or perform any of the covenants in the articles of agreement for deed and that the unformed LLC did not, and legally could not, comply with any of the terms and conditions of the articles of agreement. Plaintiff further responds that Scott Mason would not be liable under the contract because the intent of the parties was that the LLC was the buyer. We determine that the contract was not enforceable because there

was no buyer bound by the contract where (a) the LLC was never subsequently formed and never ratified the contract, and (b) Scott Mason cannot be individually liable on the contract because he is statutorily protected under the Limited Liability Company Act.

¶ 32 **A. The LLC Could Not Be Liable on the Contract Because It**
**Was Never Subsequently Formed and the Contract Was Never Ratified**

¶ 33 We first address plaintiff's contention that there was no sale because Cal City Apartments, LLC, was never formed as an Illinois limited liability company and legally could not comply with the terms and conditions of the articles of agreement. We begin our analysis with a recognition that an LLC is a corporate form of business in Illinois that has many of the same statutory powers as a corporation. Under the Business Corporation Act of 1983 (805 ILCS 5/1.01 *et seq.* (West 2006)), in relevant part, a corporation has the following powers:

"(d) To purchase, take, receive, lease as lessee, take by gift, legacy, or otherwise acquire, and to own, hold, use, and otherwise deal in and with any real or personal property ***.

* * *

(h) To incur liabilities; to borrow money for its corporate purposes at such rates of interest as the corporation may determine without regard to the restrictions of any usury law of this State, to issue its notes, bonds, and other obligations; to secure any of its obligations by mortgage, pledge, or deed of trust of all or any of its property, franchises, and income; and to make contracts, including contracts of guaranty and suretyship, but a corporation may not be organized hereunder for the purpose of insurance." 805 ILCS 5/3.10(d), (h) (West 2006).

¶ 34 Under the Limited Liability Company Act, LLCs similarly have the power to:

"(3) Purchase, take, receive, lease as lessee, take by gift, legacy, or otherwise acquire, own, hold, use, and otherwise deal in and with any real or personal property, or any interest therein, wherever situated.

* * *

(7) Incur liabilities, borrow money for its proper purposes at any rate of interest the limited liability company may determine without regard to the restrictions of any usury law of this State, issue notes, bonds, and other obligations, secure any of its obligations by mortgage or pledge or deed of trust of all or any part of its property, franchises, and income, and make contracts, including contracts of guaranty and suretyship." 805 ILCS 180/1-30 (3), (7) (West 2006).

¶ 35 In Illinois, if an individual enters into a contract on behalf of a corporation before the corporation is formed, the corporation is not liable unless it is later formed and ratifies the contract. Under the facts of this case, Scott Mason is in a position similar to that of a preincorporation promoter who enters into contracts on behalf of a corporate entity not yet in existence. "A promoter of a corporation is one who actively assists in creating, projecting and organizing a corporation." *Tin Cup Pass Ltd. Partnership v. Daniels*, 195 Ill. App. 3d

847, 850 (1990). See also *Stap v. Chicago Aces Tennis Team, Inc.*, 63 Ill. App. 3d 23, 26 (1978) ("A promoter is one who alone or with others forms a corporation and procures for it the rights, instrumentalities and capital to enable it to conduct its business."). The general rule is that "[a] contract made with a promoter of a corporation before its organization is not enforceable against the corporation unless such contract is ratified by the corporation after its organization." *New Illinois Athletic Club v. Genslinger*, 211 Ill. App. 220, 232 (1918).

¶ 36    Defendants cite to *H.F. Philipsborn & Co. v. Suson*, 59 Ill. 2d 465 (1974), *Tin Cup Pass*, 195 Ill. App. 3d 847, and *In re Estate of Plepel*, 115 Ill. App. 3d 803 (1983), and argue that these cases stand for the proposition that courts will impose liability for corporate debts prior to corporate formation. However, *H.F. Philipsborn* and *Tin Cup Pass* are easily distinguishable from the facts in this case where the corporations in those cases were eventually incorporated and ratified the contracts.

¶ 37    In *H.F. Philipsborn*, the plaintiff prepared an application for a construction and mortgage loan, which was signed by the defendant as " 'North Shore Estates, Inc., by Morris Suson Pres.' " *H.F. Philipsborn*, 59 Ill. 2d at 467. The application provided that upon acceptance by plaintiff within 60 days the application would constitute a binding contract to make the loan and that North Shore Estates would then agree to pay a commission of 2% of the loan. *H.F. Philipsborn*, 59 Ill. 2d at 467. The following words were also printed on the loan application form: " 'Title to be in the name of' " followed by " 'Trust to be formed' " and the words " 'or corporation to be formed,' " which were added by defendant Suson. *H.F. Philipsborn*, 59 Ill. 2d at 467.

¶ 38    The court in *H.F. Philipsborn* relied on the Supreme Court case of *Whitney v. Wyman*, 101 U.S. 392, 393 (1879). In that case the defendants sent a letter to the plaintiff stating, " 'Our company being so far organized, by direction of the officers, we now order from you' " certain machinery and was signed " 'Charles Wyman, Edward P. Ferry, Carlton L. Storrs, Prudential Committee Grand Haven Fruit Basket Co.' " *Whitney*, 101 U.S. at 393. The plaintiff accepted the order for the machinery. *Whitney*, 101 U.S. at 393. The order was dated February 1, 1869, and the acceptance was dated February 10, 1869, before the articles of incorporation were filed with the Secretary of State. *Whitney*, 101 U.S. at 393. The machinery was delivered but the plaintiff's draft on the defendants was protested because it was addressed to them individually. *Whitney*, 101 U.S. at 394. The plaintiff filed an action against the defendants individually to recover the value of the machinery. The Court applied the rule that whether liability will be imposed upon the promoter depends upon the intent of the parties (*Whitney*, 101 U.S. at 395-96) and found from the exchange of letters "that both parties understood and meant that the contract was to be and, in fact, was with the corporation, and not with the defendants individually." *Whitney*, 101 U.S. at 396. The Court in *Whitney* further held that "[t]he corporation subsequently ratified the contract by recognizing and treating it as valid. This made it in all respects what it would have been if the requisite corporate power had existed when it was entered into." *Whitney*, 101 U.S. at 396-97.

¶ 39    In *H.F. Philipsborn* , the corporation also was subsequently formed and ratified the contract. North Shore Estates was organized within 60 days of the execution of the loan application, and it approved and adopted Suson's acts and its assumption of liability. *H.F.*

-10-

*Philipsborn*, 59 Ill. 2d at 472. Thus, the court held that under these circumstances, the plaintiff looked only to the corporation for its commission and that there was no basis for the imposition of personal liability on Suson individually for the payment of the loan commission merely because the corporation was not yet formed at the time the application was executed. *H.F. Philipsborn*, 59 Ill. 2d at 472-73. The court held that, "[o]n this record," whether the corporation existed at the time the contract was entered into was "not controlling," and held that the corporation, and not the individual, was liable. *H.F. Philipsborn*, 59 Ill. 2d at 472-73.

¶ 40    The court in *Tin Cup Pass* likewise held that the actions of the parties after the lease, whereby the corporation ratified the contract, "rendered the lease as valid as if the requisite corporate authority had existed when it was entered into." *Tin Cup Pass*, 195 Ill. App. 3d at 851. In *Tin Cup Pass*, it was undisputed that the plaintiff's predecessor who signed the lease knew that a corporation had yet to be formed. *Tin Cup Pass*, 195 Ill. App. 3d at 850-51. The lease listed a corporate name as the lessee, and the defendants signed in their capacities as corporate officers and not as individuals, and there were no individual guarantees. *Tin Cup Pass*, 195 Ill. App. 3d at 851. The court held that under these facts, "[i]t was clearly the intent of the parties to the lease to create a lease with a corporation as the lessee." *Tin Cup Pass*, 195 Ill. App. 3d at 851.

¶ 41    Defendants argue that the agreement in this case establishes that Cal City Apartments, LLC, was the intended entity to be bound by the agreement, and that under *Tin Cup Pass* and *H.F. Philipsborn* the unformed LLC was bound by the contract. However, contrary to defendants' contention, the same result in *Tin Cup Pass* and *H.F. Philipsborn* does not obtain here. In both *Tin Cup Pass* and *H.F. Philipsborn*, the corporations were later formed and ratified the contract. The holding of *H.F. Philipsborn* has been applied only in similar cases where the intent was to hold the corporation liable on a contract *and* the corporation was later incorporated and adopted and ratified the actions of the individual promoter. See, *e.g.*, *Tin Cup Pass*, 195 Ill. App. 3d at 851. See *Peter J. Hartmann Co. v. Capital Bank & Trust Co.*, 296 Ill. App. 3d 593, 607 (1998) (citing *H.F. Philipsborn*, the court held the corporation ratified one of the individual counterplaintiffs' conduct as president and a shareholder of a corporation who negotiated before its incorporation); *Deerpath Investment, Inc. v. Barack*, 112 Ill. App. 3d 692, 696 (1983) (citing *H.F. Philipsborn* and holding that the promoter of a corporation was not individually liable on a lease entered into on behalf of an as-yet-unformed corporation where the corporation was later incorporated and ratified and adopted the subject lease); *Stap v. Chicago Aces Tennis Team, Inc.*, 63 Ill. App. 3d 23, 27 (1978) (holding that an individual promoter was not liable for a salary contract where the provisions of the contract established that the plaintiff tennis player entered into the contract with a to-be-formed corporation, and the evidence showed that the corporation was later incorporated and an amendment was signed by the parties).

¶ 42    Here, unlike *H.F. Philipsborn* and *Tin Cup Pass*, the LLC was never formed, and so it never adopted and ratified the articles of agreement for deed. The legal existence of an LLC does not begin until articles of organization have been filed with the Secretary of State. 805 ILCS 180/5-40(a) (West 2006). It is undisputed that articles of organization for Cal City Apartments, LLC, were never filed and, therefore, Cal City Apartments, LLC, never existed.

As the LLC never existed, it could not have ratified the actions of Scott Mason.

¶ 43    Also, because Cal City Apartments, LLC, was not yet formed, it could not have been bound by the agreement because Scott Mason had no authority to bind the LLC. Under the Limited Liability Company Act:

"Each member is an agent of the limited liability company for the purpose of its business, and an act of a member, including the signing of an instrument in the company's name, for apparently carrying on, in the ordinary course, the company's business or business of the kind carried on by the company binds the company, *unless the member had no authority to act for the company in the particular matter and the person with whom the member was dealing knew or had notice that the member lacked authority*." (Emphasis added.) 805 ILCS 180/13-5(a)(1) (West 2006).

¶ 44    Further, "[a]n act of a manager which is not apparently for carrying on, in the ordinary course, the company's business or business of the kind carried on by the company binds the company only if the act was authorized under Section 15-1." 805 ILCS 180/13-5(b)(2) (West 2006). Section 15-1 provides that in a member-managed LLC, except in certain circumstances not applicable here, any matter relating to the business of the LLC may be decided by a majority of the members. 805 ILCS 180/15-1(a)(2) (West 2006). In a manager-managed company, also subject to exceptions which are not applicable here, any matter relating to the business of the company may be decided by the manager or by a majority of the managers if there is more than one manager. 805 ILCS 180/15-1(b)(2) (West 2006).

¶ 45    Here, the record is not clear whether the agreement entered into for the purchase of property would have been for carrying on the regular course of business of Cal City Apartments, LLC, but under either section 13-5(a)(1) or section 13-5(b)(2) and section 15-1, it is clear that there was no act by the LLC authorizing Scott Mason because the LLC was not in existence yet. Thus, the act of Scott Mason in entering the contract to purchase the River Oaks property was unauthorized.

¶ 46    Also, under the notice provision of section 13-5(a)(1), defendants could not enforce the agreement against Cal City Apartments, LLC, because the articles of agreement clearly indicated that Cal City Apartments, LLC, was "an Illinois Limited Liability Company *yet to be formed*." (Emphasis added.) Thus, defendants had notice that Scott Mason could not have authority from the LLC to bind the LLC because the LLC was not yet in existence. Therefore, we hold that because the LLC was never formed, the contract was never ratified and Scott Mason's execution of the agreement was unauthorized, the LLC could not be liable for the agreement.


¶ 47        B. Scott Mason Is Not Individually Liable Because the Limited Liability
                 Company Act Shields Members of LLCs From Personal Liability

¶ 48    Defendants argue that the articles of agreement were valid even if the unformed LLC could not be held liable because the individual who signed, Scott Mason, would then be personally liable. However, here there is an important distinction between corporations and LLCs that neither party recognizes which is dispositive of this issue. We explain that, by statute, as a matter of law Scott Mason cannot be personally liable.

¶ 49       Defendants contend that *H.F. Philipsborn*, *Tin Cup Pass*, and *Estate of Plepel* all stand for the proposition that courts will impose personal liability on individuals who incur corporate debts prior to corporate formation. However, we note that the result in *H.F. Philipsborn* and *Tin Cup Pass* was the opposite of the result sought here by defendants; the corporations were held liable, not the individual, because the corporations were ultimately formed and adopted and ratified the contracts. See *H.F. Philipsborn*, 59 Ill. 2d at 472; *Tin Cup Pass*, 195 Ill. App. 3d at 851. In *Estate of Plepel*, on the other hand, the decedent's estate was liable because there was no evidence that the parties intended to hold the corporation liable, or that the claimants even knew they were dealing with a corporation. *Estate of Plepel*, 115 Ill. App. 3d at 807-08.

¶ 50       In determining whether a corporate officer has contracted in his own behalf, we apply the general rules of agency. *Polivka v. Worth Dairy, Inc.*, 26 Ill. App. 3d 961, 966 (1974). The question of whether an agency relationship exists is normally a question of fact; however, a court may decide the issue as a matter of law if only one conclusion may be drawn from the undisputed facts. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 202 (2008) (citing *Churkey v. Rustia*, 329 Ill. App. 3d 239, 243 (2002)). The common law rule is that where an agent signs a contract in his own name and the contract nowhere mentions the existence of agency or the identity of the principal, the agent is personally liable and parol evidence is not admissible to rebut the presumption of the agent's personal liability. *Bank of Pawnee v. Joslin*, 166 Ill. App. 3d 927, 935 (1988). A corporate officer who signs his name on a contract, without more, is individually liable on the contract. *84 Lumber Co. v. Denni Construction Co.*, 212 Ill. App. 3d 441, 443 (1991).

¶ 51       On the other hand, when an agent signs a document and indicates next to his signature his corporation affiliation, then, absent evidence of contrary intent in the document, the agent is not personally bound. *Central Illinois Public Service Co. v. Molinarolo*, 223 Ill. App. 3d 471, 475 (1992) (citing *Knightsbridge Realty Partners, Ltd-75 v. Pace*, 101 Ill. App. 3d 49, 53 (1981)). Directors or other officers of corporations are not liable for the debts contracted in the name of, and on behalf of, the corporation and which are binding upon it unless they are expressly made liable by statute or unless they also contract on their own behalf. *Polivka*, 26 Ill. App. 3d at 966. " 'One of the purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf.' " *People ex rel. Madigan v. Tang*, 346 Ill. App. 3d 277, 284 (2004) (quoting *National Acceptance Co. of America v. Pintura Corp.*, 94 Ill. App. 3d 703, 706 (1981)). However, an unauthorized agent purporting to enter into a contract for a principal is personally liable. *Polivka*, 26 Ill. App. 3d at 966.

¶ 52       Here, Scott Mason clearly indicated he was signing the articles of agreement on behalf of Cal City Apartments, LLC, thus seemingly insulating himself from liability. See *Baker v. Daniel S. Berger, Ltd.*, 323 Ill. App. 3d 956, 969 (2001) (holding that the individual's signature on the face of the agreement was clear that he signed the agreement in his representative capacity on behalf of the corporation and therefore would not be personally bound). However, the LLC was never formed and so it never adopted and ratified the articles of agreement for deed. Thus, it would appear that Scott Mason should be liable on the contract, as he acted without authority of the LLC because the LLC was never formed and

-13-

therefore never ratified his action in entering the articles of agreement.

¶ 53 However, there is an important statutory distinction between LLCs and corporations that provides members or managers of unformed LLCs with more protection from personal liability than officers of corporations in this context. Section 3.20 of the Business Corporation Act of 1983 specifically directs:

"All persons who assume to exercise corporate powers without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." 805 ILCS 5/3.20 (West 2006).

¶ 54 The Limited Liability Company Act had a provision similar to section 3.20 of the Business Corporation Act. Prior to its amendment, section 10-10 provided:

"(b) A manager of a limited liability company shall be personally liable for any act, debt, obligation, or liability of the limited liability company or another manager or member to the extent that a director of an Illinois business corporation is liable in analogous circumstances under Illinois law." 805 ILCS 180/10-10(b) (West 1996).

¶ 55 However, when the legislature amended section 10-10 of the Limited Liability Company Act in 1997, it specifically removed the provision that allowed a member or manager of an LLC to be held personally liable for the unauthorized exercise of corporate powers in the same manner as provided in the Business Corporation Act. *Puleo v. Topel*, 368 Ill. App. 3d 63, 69-70 (2006). See Pub. Act 90-424 (eff. Jan. 1, 1998) (deleting 805 ILCS 180/10-10(b) (West 1996)).

¶ 56 In addition, the remaining provisions of the Limited Liability Company Act provide that a member or manager is *not* liable for acting on behalf of an LLC:

"A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10(a) (West 2006).

¶ 57 Section 10-10(a) of the Limited Liability Company Act provides the only means by which an individual can be liable for contracts entered into on behalf of an LLC:

"(a) Except as otherwise provided in subsection (d) of this Section, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company." 805 ILCS 180/10-10(a) (West 2006).

¶ 58 Subsection (d) in turn provides that an LLC member can be liable to a third party for debts or obligations only if: (1) there is a provision to that effect in the LLC's articles of organization; and (2) the member has consented in writing to that provision. 805 ILCS 180/10-10(d) (West 2006).

¶ 59 Subsection (c) further provides that "[t]he failure of a limited liability company to observe the usual company formalities or requirements relating to the exercise of its company powers or management of its business is not a ground for imposing personal liability on the members or managers for liabilities of the company." 805 ILCS 180/10-10(c) (West 2006).

¶ 60 We have recognized the clear legislative intent to shield individuals from personal liability in transactions on behalf of LLCs, where the LLC did not exist because it was

dissolved. In *Puleo*, we held that a managing member was not personally liable for debts that an LLC incurred after its dissolution because there was no evidence of a provision establishing the managing member's personal liability was contained in the LLC's articles of organization or that the managing member consented in writing to the adoption of such a provision, which are the requirements of section 10-10(d) of the Limited Liability Company Act. *Puleo*, 368 Ill. App. 3d at 68. We declined to imply into the Limited Liability Act a provision similar to section 3.20 of the Business Corporation Act that would hold an individual member liable for obligations incurred when the member was without authority because the LLC was not in existence. *Puleo*, 368 Ill. App. 3d at 69. We held that "[a]s we have not found any legislative commentary regarding that amendment, we presume that by removing the noted statutory language, the legislature meant to shield a member or manager of an LLC from personal liability." *Puleo*, 368 Ill. App. 3d at 69. Thus, other than the very limited circumstances specified in section 10-10(d), there is no individual liability for members for any debts and obligations entered into on behalf of an LLC even where, as here, such acts were unauthorized due to the fact that the LLC had not yet been formed.

¶ 61 Here, there is no evidence that the requirements of section 10-10(d) were met, and thus there is no basis for holding Scott Mason bound by the contract. While in *Puleo* the LLC was dissolved at the time the contract was entered into, whereas here the LLC was never formed in the first place, the holding of *Puleo* is equally applicable, as in both instances the LLC was not in existence at the time of contract. In this case it is undisputed that the LLC was never formed, and there is no evidence offered by defendants that there were articles of organization providing for Mason's liability, nor any writing in which Scott Mason agreed to be liable. See *Puleo*, 368 Ill. App. 3d at 68 (independent contractors could not establish a managing member's personal liability for debts that the LLC incurred after its dissolution without showing that a provision establishing the managing member's personal liability was contained in the LLC's articles of organization and that the managing member consented in writing to the adoption of such a provision). Thus, Scott Mason could not be held individually liable for the articles of agreement for deed because he is statutorily shielded from liability. Therefore, neither the unformed LLC nor Scott Mason could be held liable on the contract and the articles of agreement could not be enforced.

¶ 62                                                    CONCLUSION

¶ 63 We conclude that there was no sale of the River Oaks property and that, therefore, plaintiff was correctly awarded the additional settlement payment. First, there was no sale of the River Oaks property by virtue of the articles of agreement for deed because the agreement constituted merely an executory contract to sell the property and did not transfer legal title. Also, there was no sale after the execution of the contract because no payments were ever made and no closing was held, which were conditions precedent of the transfer of title to the property under the contract. Second, we also hold that there was no sale because there was no enforceable contract due to the fact that there was no party who could be held liable as a buyer. The LLC was never formed and thus never ratified the contract on behalf of the LLC or gave Scott Mason authority to enter into the contract. Also, statutorily as a matter of law Scott Mason could not be individually liable for signing the contract on behalf

-15-

of the unformed LLC due to insulation from liability under the Limited Liability Company Act. Thus, there is no genuine issue of material fact that there was no sale of the River Oaks property. The circuit court correctly granted summary judgment in favor of plaintiff and awarded plaintiff the additional payment of $30,000 she was due under her settlement agreement with defendants.

¶ 64       Affirmed.