# Illinois Official Reports

## Appellate Court

---

**Tadros v. City of Chicago Department of Administrative Hearings,**
**2021 IL App (1st) 200273**

---

| | |
|---|---|
| Appellate Court Caption | GERESE TADROS, Plaintiff-Appellee, v. THE CITY OF CHICAGO DEPARTMENT OF ADMINISTRATIVE HEARINGS; THE CITY OF CHICAGO DEPARTMENT OF FINANCE; and THE CITY OF CHICAGO, Defendants-Appellants. |
| District & No. | First District, Sixth Division<br>No. 1-20-0273 |
| Filed | October 29, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-M-1450131; the Hon. Leonard Murray, Judge, presiding. |
| Judgment | Reversed; department decision affirmed. |
| Counsel on Appeal | Mark A. Flessner, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Ellen Wight McLaughlin, Assistant Corporation Counsel, of counsel), for appellants.<br><br>No brief filed for appellee. |

Panel                    JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Mikva and Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendants, the City of Chicago Department of Administrative Hearings (DOAH), the City of Chicago Department of Finance, and the City of Chicago (City), appeal the circuit court's reversal of the DOAH's judgment upon administrative review. The DOAH had found that plaintiff Gerese Tadros was jointly liable for the unpaid water bills associated with property located at 4627 S. State Street in Chicago, Illinois. On appeal, defendants contend that the circuit court's judgment was error where Tadros was an "owner" of the property as defined by the Chicago Municipal Code (Municipal Code) and that the Municipal Code's requirement that owners be jointly and severally liable for water bills was a proper exercise of the City's home rule authority. For the following reasons, we reverse the judgment of the circuit court and affirm the DOAH's judgment.

¶ 2                                I. JURISDICTION
¶ 3        The circuit court reversed the DOAH's judgment on November 21, 2019, and the City filed a motion to reconsider. The court denied the motion to reconsider on January 10, 2020, and the City filed a notice of appeal on February 7, 2020. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                II. BACKGROUND
¶ 5        On March 23, 2018, the City filed two complaints with the DOAH alleging approximately $56,000 in unpaid water bills for service provided to 4627 S. State Street between 2007 and 2017. The complaints named Gerese N. Tadros, "Suburban Bank and Trust Co. TR#713947, DTD 6/25/07" (Trust), and "Gerese N. Tadros d/b/a 46th & State, LLC," as respondents. The Trust was the legal owner of the State Street property, and the LLC was the beneficiary of the Trust. The trust agreement indicated that Tadros had the power of direction for the Trust. Tadros was also the manager of the LLC.

¶ 6        The administrative law judge (ALJ) found respondents liable by default on August 18, 2018, but counsel subsequently appeared on their behalf and filed a motion to set aside the default judgments. The hearing officer granted the motion. On November 3, 2018, respondents filed a motion to dismiss Tadros, arguing that, because he was the member-manager of the LLC, he could not be held individually liable for the debt. The motion also clarified that the name of the LLC was "47th and State, LLC." The ALJ granted the motion to dismiss "Gerese N. Tadros, doing business as 46th and State, LLC," and to add "47th and State." The matter was continued for a hearing.

¶ 7        The hearing was held on April 5, 2019. At the hearing, the ALJ stated that "it looks as if Garese[1] Tadros, doing business at [*sic*] 46th and State, LLC was dismissed." Tadros's attorney responded, "But Garese Tadros as an individual has not been dismissed." Counsel also did not dispute the unpaid water bills, the amount of outstanding bills, or that the Trust and the LLC were responsible for the bills as owners of the property. The ALJ confirmed that the only issue at the hearing was whether Tadros as an individual was liable for the unpaid bills.

¶ 8        At the hearing, Connie Fabrizio of the Department for Utility Billing and Customer Service testified that, under city ordinances, owners of a property are responsible for utility bills. Section 11-12-010 of the Municipal Code defines an owner as including "any person, including the agent of the legal title holder, who is authorized or entitled to control, manage or dispose of any premises, dwelling or dwelling unit." Chicago Municipal Code § 11-12-010 (amended Nov. 26, 2019). The City introduced the trust agreement listing Tadros as the holder of the power of direction for the Trust. Illinois Secretary of State records also listed Tadros as the manager of 47th and State, LLC. Water bills for the property were sent to Tadros's address in Oak Lawn, Illinois.

¶ 9        The City sought to present as evidence this court's unpublished order in *Omega Missionary Baptist Church v. Beard*, 2018 IL App (1st) 171522-U. In that case, the court found that Tadros entered into a use and occupancy agreement with Omega in 2011 and that Tadros was the owner of the property and only he had the statutory obligation to pay taxes on the property. *Id.* ¶ 20. The ALJ allowed the order into evidence, but she noted that the order was "not binding" as to the ownership issue. The City also introduced a recommendation for disposition issued by the Illinois Department of Revenue in which the Department found Omega leased the property from Tadros and that Tadros personally earned a profit from the property in 2008 and 2009. Again, the ALJ allowed the evidence but stated that the ruling was not precedent, nor was she bound by the conclusions or findings therein.

¶ 10        Counsel for Tadros argued that, as manager of the LLC, he was not personally liable for the debts and obligations of the LLC because section 10-10 of the Limited Liability Company Act (LLC Act) (805 ILCS 180/10-10 (West 2020)) preempted the Municipal Code. In response, the City argued that, even if a conflict existed between the Municipal Code and the LLC Act, there is no specific language in the statute that limits the City's home rule authority in this area. The City maintained that such language is necessary for the LLC Act to preempt the city's ordinance. After hearing arguments, the ALJ found "in favor of the City as to the liability on behalf of all Respondents including Mr. Tadros." The written "Findings, Decisions & Order" only listed each failure-to-pay charge and the amounts due and owing to the City.

¶ 11        Tadros filed a complaint for administrative review, making the same arguments he presented at the DOAH hearing. The City argued that a recent amendment to section 10-10 of the LLC Act clarified that the statute does not shield an LLC manager from liability "under law other than this Act for its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company." *Id.* § 10-10(a-5). Also, the LLC Act did not preempt the City's home rule authority to assign responsibility for water service bills.

---

[1]The hearing transcripts in the DOAH administrative record spell Tadros's first name as Garese, but his complaint spells it Gerese.

¶ 12   At the hearing, the circuit court noted that Tadros d/b/a 46th and State, LLC, was dismissed as a party. The court questioned whether the City's action was negated as a result of the dismissal. The court continued, "maybe there is an issue that everybody missed; but when I'm looking at this and I see that he was dismissed individually d/b/a, then he is dismissed individually." Counsel for the City disagreed, pointing out that the complaint listed as respondents Tadros individually and Tadros doing business as the LLC. Only Tadros d/b/a the LLC was dismissed.

¶ 13   The court went on to address the home rule issue, noting that the ALJ found for the City "without explanation." It acknowledged that there may be a conflict between the LLC statute and the City's home rule authority. The court was also "troubled" by the dismissal issue it raised. For these reasons, the circuit court reversed the ALJ's ruling.

¶ 14   The City filed a motion to reconsider. The motion argued that Tadros did not object to the complaint naming him, individually, as a respondent. The issue of Tadros's dismissal as an individual "was something the Court" raised, and the issue "wasn't briefed." The court denied the motion to reconsider, and the City filed this appeal.[2]

¶ 15                                    III. ANALYSIS

¶ 16   The City contends we should affirm the DOAH's determination that Tadros is jointly liable for the unpaid water bills where Tadros is an "owner" of the property as defined by the Municipal Code, and the provisions of the LLC Act do not limit his personal liability. In the administrative proceedings below, the only issue before the ALJ was whether Tadros as the LLC's member/manager could be held personally liable for the unpaid water bills. Resolution of this issue involves interpretation of the Municipal Code and the LLC Act.

¶ 17   This court's primary goal in interpreting a statute is to give effect to the legislature's intent. *Land v. Board of Education of Chicago*, 202 Ill. 2d 414, 421 (2002). "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). Where resolution of an issue turns on the interpretation of a statute, it presents a question of law, which we review *de novo*. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210-11 (2008). The ALJ's determination on a question of law is also reviewed *de novo*. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 18   Section 11-12-330 of the Municipal Code provides that "[t]he owner or owners of a property, location or address where water or water service is supplied shall be jointly and severally responsible for payment for any water or water service supplied." Chicago Municipal Code § 11-12-330 (amended Nov. 26, 2019). Section 11-12-010 defines "owner" as

> "any person who alone, or jointly or severally with others, is: (1) the legal title holder or holders to any premises, or dwelling units, with or without accompanying actual possession thereof; (2) the beneficial owner or owners of an Illinois Land Trust if legal title is held by such a trust; (3) the purchaser under a real estate installment sales contract; (4) any person serving as executor, administrator, trustee, or guardian of an estate if legal title is held by the estate; or (5) any person, including the agent of the legal title holder, who is authorized or entitled to control, manage or dispose of any

[2]Tadros has not filed a brief on appeal. Nonetheless, we may proceed under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

premises, dwelling or dwelling unit." Chicago Municipal Code § 11-12-010 (amended Nov. 26, 2019).

The City argued that Tadros was an "owner" under definition (5). Tadros acknowledged that respondent Trust was the legal owner of the property and respondent LLC was a beneficial owner, as defined by section 11-12-010. He argued, however, that as the manager of the LLC he had no personal liability for the LLC's obligations or debts under the provisions of the LLC Act.

¶ 19 Section 10-10 of the LLC Act states:

"(a) Except as otherwise provided in subsection (d) of this Section, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company. A member or manager is not personally liable for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager."

* * *

(d) All or specified members of a limited liability company are liable in their capacity as members for all or specified debts, obligations, or liabilities of the company if:

(1) a provision to that effect is contained in the articles of organization; and

(2) a member so liable has consented in writing to the adoption of the provision or to be bound by the provision." 805 ILCS 180/10-10(a), (d) (West 2020).

Tadros signed an affidavit stating that the articles of organization of the LLC "do not contain any provision that I, or any other member or manager of the company, accept liability for the debts, obligations, or liabilities of the company" and "I have never consented in writing to accept any debt, obligation or liability, of the company."

¶ 20 The City responded that section 10-10 of the LLC Act, as recently amended, does not shield Tadros from liability merely because he was the manager of the LLC. Section 10-10(a-5) provides:

"(a-5) Nothing in subsection (a) or subsection (d) limits the personal liability of a member or manager imposed under law other than this Act, including, but not limited to, agency, contract, and tort law. The purpose of this subsection (a-5) is to overrule the interpretation of subsections (a) and (d) set forth in *Dass v. Yale*, 2013 IL App (1st) 122520, and *Carollo v. Irwin*, 2011 IL App (1st) 102765, and clarify that under existing law a member or manager of a limited liability company may be liable under law other than this Act for its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company." *Id.* § 10-10(a-5).

¶ 21 The City contends on appeal that as amended, the LLC Act does not "shelter an LLC manager from personal liability merely because he is 'acting or purporting to act on behalf of' the LLC." Rather, under subsection (a-5) managers "may be liable under law other than" the LLC Act. *Id.* We agree that the provisions of the LLC Act do not categorically preclude Tadros from liability in this case.

¶ 22 Sections 10-10(a) and (d) of the LLC Act clearly provide that a manager is not personally liable for a debt of the company solely by being a manager, unless a provision to that effect is contained in the articles of organization and the manager so consented in writing. *Id.* § 10-10(a), (d). Section 10-10(a-5), however, clarifies that nothing in the LLC Act "limits the

personal liability of a member or manager imposed under law other than this Act," for the manager's "own wrongful acts or omissions." *Id.* § 10-10(a-5). The statute thus makes a distinction between personal liability for one's own actions under law other than the LLC Act and personal liability for the LLC's debts solely because of one's status as the manager of the company. If liability is based on the former, the LLC Act does not preclude a claim against an LLC manager.

¶ 23     To emphasize the point, the legislature explicitly repudiated the interpretation of the LLC Act in *Dass v. Yale*, 2013 IL App (1st) 122520, and *Carollo v. Irwin*, 2011 IL App (1st) 102765. In those cases, the court found that section 10-10(a) and (d) of the LLC Act shielded the defendants from liability for their own actions in acting without legal authority (*Carollo*) or in committing fraud (*Dass*). The legislature made clear in section 10-10(a-5) that "a member or manager of a limited liability company may be liable under law other than this Act for its own wrongful acts or omissions." 805 ILCS 180/10-10(a-5) (West 2020).

¶ 24     The City contends that Tadros is an owner under the Municipal Code and thus is responsible for the water service bills under that ordinance. The trust agreement designated Tadros as the holder of the power of direction for the Trust. As this court has explained:

> "The land trust is a device by which the real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all rights of ownership other than holding or dealing with the legal title. The arrangement is created by two instruments. The deed in trust conveys the realty to the trustee. Contemporaneously with the deed in trust a trust agreement is executed. The pertinent provisions of the trust agreement are summarized as follows: While legal title to the real estate is held by the trustee, the beneficiaries retain 'the power of direction' to deal with the title, to manage and control the property, to receive proceeds from sales or mortgages and all rentals and avails on the property. The trustee agrees to deal with the *res* of the trust only upon the written direction of the beneficiaries or the persons named as having power of direction ***." *Robinson v. Chicago National Bank*, 32 Ill. App. 2d 55, 58 (1961).

The Municipal Code defines owner as "any person, including the agent of the legal title holder, who is authorized or entitled to control, manage or dispose of any premises, dwelling or dwelling unit." Chicago Municipal Code § 11-12-010 (amended Nov. 26, 2019). Under the ordinance, "[t]he owner or owners of a property, location or address where water or water service is supplied shall be jointly and severally responsible for payment for any water or water service supplied." *Id.* § 11-12-330.

¶ 25     Here, Tadros's liability is not solely based on his status as the manager of the LLC. Rather, he is being held accountable under another law, the Municipal Code, for his own acts or omissions as an owner of the property. Section 10-10(a-5) of the LLC Act specifically states that this type of claim against an LLC manager is not prohibited. Accordingly, we affirm the ALJ's finding "in favor of the City as to the liability on behalf of all Respondents including Mr. Tadros."

¶ 26     Since we find the LLC Act does not conflict with the Municipal Code in this case, we need not address the City's alternate argument that the City properly exercised its home rule authority to define "owner" for the purpose of assigning liability for unpaid water service bills.

¶ 27 The City raises an additional argument on appeal that the circuit court erred when it reversed the DOAH's determination, in part, because it believed Tadros may have been dismissed as a party in the proceedings. We note that the circuit court below acknowledged that it was raising the issue for the first time on administrative review. In general, issues not raised before the ALJ "will not be considered for the first time on administrative review." *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97 (2002). Nonetheless, the record shows that Tadros was not dismissed as a party before the administrative hearing. When the ALJ stated that Tadros doing business as 46th and State, LLC, had been dismissed, Tadros's counsel responded that "Garese Tadros as an individual has not been dismissed." To the extent the circuit court relied on its belief that Tadros had been dismissed when it reversed the ALJ's decision, the court erred. In a case of administrative review, however, this court reviews the decision of the agency rather than the circuit court's determination and reasoning. *Frances House, Inc. v. Department of Public Health*, 2015 IL App (1st) 140750, ¶ 22. Whatever errors the circuit court may have committed below do not affect our conclusion here.

¶ 28                                        IV. CONCLUSION

¶ 29 For the foregoing reasons, the judgment of the circuit court is reversed and the DOAH's decision is affirmed.

¶ 30 Reversed; department decision affirmed.