**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230186-U

Order filed March 12, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| FRANK MNUK and JESSICA RAYMOND, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiffs-Appellants, | ) | |
| | ) | Appeal No. 3-23-0186 |
| v. | ) | Circuit No. 22-LA-580 |
| | ) | |
| DAVID RAUCH, | ) | The Honorable |
| | ) | Timothy J. McJoynt, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   In an appeal in a breach of contract case relating to a sale of real property that failed to close, the appellate court found that the defendant (buyer) had properly terminated the parties' contract pursuant to the contract's soil test contingency. The appellate court, therefore, affirmed the trial court's judgment, which granted the defendant's motion to involuntarily dismiss the plaintiffs' (sellers') first amended complaint for breach of contract against the defendant.

¶ 2     Plaintiffs, Frank Mnuk and Jessica Raymond, filed a first amended complaint against defendant, David Rauch, for breach of contract relating to defendant's refusal to complete his purchase of certain real property in Warrenville, Du Page County, Illinois, from plaintiffs.

Defendant filed a motion to involuntarily dismiss (735 ILCS 5/2-619(a)(9) (West 2022)) plaintiffs' first amended complaint, asserting that the contract was voidable, unenforceable, and had been properly terminated by defendant. After full briefing and a hearing on the matter, the trial court agreed with defendant's second and third assertions (that the contract was unenforceable and had been properly terminated) and granted defendant's motion to dismiss. Plaintiffs appeal. We affirm the trial court's judgment.

¶ 3                                              I. BACKGROUND

¶ 4            Plaintiffs owned land in Warrenville, Illinois, that they wanted to subdivide into separate parcels and sell. Defendant was an adjoining landowner who wanted to purchase one of plaintiffs' vacant subdivided lots—the one that abutted defendant's own property. In December 2020, plaintiffs and defendant entered into an agreement for plaintiffs to sell that particular lot to defendant for $190,000 after the subdivision process was completed. When the parties finished negotiating the general terms of their agreement, they had their attorneys draft a written contract to put their agreement into writing.

¶ 5            The contract that the attorneys used was a standard preprinted form, fill-in-the-blank form contract that had been issued by the local realtors' association for the sale of a vacant lot. Among other things, the form contract allowed the buyer's and sellers' attorneys to propose modifications to the contract for a brief period after the date of acceptance. In addition, the form contract contained multiple contingencies that allowed the buyer to terminate the contract or to exercise some other remedy if a certain event occurred or failed to occur. To exercise his right to terminate the contract based upon a contingency (if that remedy was available), the buyer had to notify the seller in writing within a certain number of days of the contingency date. If the buyer failed to do so, the contingency was waived, and the contract continued in full force and effect.

¶ 6    Pursuant to the terms of the written contract, as drafted by the parties' attorneys, defendant's purchase of the property was contingent upon (1) the final subdivision of the land being approved; (2) defendant obtaining a satisfactory soil boring test and/or flood plain determination; (3) defendant obtaining a building permit for the property from the applicable governmental agency; and (4) plaintiffs providing defendant with a title commitment prior to closing.

¶ 7    More specifically, and of particular relevance to this appeal, the soil test contingency contained in the parties' contract stated as follows:

> "SOIL TEST/FLOOD PLAIN CONDITION: This Contract is subject to Buyer obtaining within __ Business Days from date of acceptance a soil boring test and/or Flood Plain Determination at a site or sites of Buyer's choice on the Property to obtain the necessary permits from the appropriate governmental authorities for the improvement contemplated by the Buyer. Such determination and tests shall be at Buyer's expense. In the event Flood [P]lain Determination and such tests are unsatisfactory, at the option of Buyer, and upon written notice to Seller within one (1) business day of the time set forth above, this contract shall be null and void and earnest money shall be refunded to Buyer upon mutual written direction of Seller and Buyer or the escrow agent. In the event the Buyer does not serve written notice within the time specified herein, this provision shall be deemed waived by all parties hereto and this contract shall continue in full force and effect."

¶ 8    Because the land had not yet been subdivided, the initial version of the contract in this case provided only a limited description of the property to be sold and did not contain specific

3

dates for the contingencies or the closing to occur since the parties were waiting for the subdivision process to be completed before that information or those deadlines could be determined. Later that same month (December 2020) and during the following month, the contract was modified by the parties' attorneys pursuant to the attorney modification provision and a more specific description of the property and of the closing date were provided, but contingency dates were never added to the contract.

¶ 9 After the contract was signed, plaintiffs spent the next few months working to subdivide the land. By the end of March 2021, the subdivision process was completed and plaintiffs recorded a subdivision plat that included the subject property.

¶ 10 Defendant subsequently hired an engineering firm, Engineering Resource Associates, Inc. (ERA), to conduct a soil test on the subject property. In April 2021, after the testing had been completed, ERA issued an extensive report to defendant titled "Wetland Delineation Report" in which it found that the subject property was a wetland and was not a buildable lot. ERA included in its report a map of the entire area affected by the wetland. The map showed that the boundaries of the wetland encroached well into the property at issue. Defendant emailed questions to ERA about the report. The president of ERA responded (the ERA response) and confirmed that ERA's opinion was that the subject property was a wetland and was not a buildable lot.

¶ 11 Defendant's attorney then emailed plaintiffs' attorney a letter proposing three possible alternatives for the purchase going forward (referred to hereinafter at times as the proposed alternatives letter): (1) that defendant would continue in his purchase of the property if plaintiffs would obtain written preapproval for defendant to build on the property and if plaintiffs would deduct from the purchase price any mitigation costs that arose therefrom; (2) that defendant was

4

open to purchasing the property without preapproval if plaintiffs would reduce the purchase price to reflect that the property was a wetland and unbuildable; or (3) that defendant "[would] accept a termination of the contract." Plaintiffs' attorney responded to the letter and stated that the contract was not contingent and that plaintiffs would not renegotiate. Defendant made no further reply, and a closing of the sale between plaintiffs and defendant never occurred.

¶ 12      In June 2021, because the sale of the subject property to defendant had apparently fallen through, plaintiffs hired a real estate broker and listed the property for sale. Approximately 11 months later, in May 2022, plaintiffs sold the property to a third party for $110,000—$80,000 less than defendant was going to pay for the property. The following month (June 2022), plaintiffs filed their original complaint in the trial court in the instant case for breach of contract against defendant. Plaintiffs attached copies of the parties' contract and the recorded subdivision plat to the original complaint as exhibits.

¶ 13      Defendant subsequently filed a motion to involuntarily dismiss the original complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619) (West 2022)). In the motion, defendant asserted that dismissal was warranted because defendant had properly terminated the contract (or had declared the contract null and void) pursuant to the contract contingencies and because the contract was voidable due to the mutual mistake of the parties or negligent misrepresentation of plaintiffs as to whether the subject property was a buildable lot. As a supporting document, defendant attached his affidavit to the motion. In addition to attesting to some of the background facts set forth above, defendant attested that he told plaintiff during contract negotiations that he needed the subject property to be a buildable lot, that plaintiffs represented to him that the subject property was buildable, that the contingencies at issue had not been waived, that the contract was terminated after plaintiffs

5

refused to renegotiate, that defendant was not able to obtain a building permit for the property and would not have been able to do so because of the soil test and wetland classification, and that defendant was not provided with a title commitment by plaintiffs. Defendant attached copies of the response he received from ERA's president, confirming that the subject property was a wetland and not buildable, and the letter that defendant's attorney had sent plaintiffs' attorney regarding the soil test results and the alternatives that defendant was proposing.

¶ 14        Plaintiffs filed a written response and opposed the motion to dismiss. As supporting documents, plaintiffs attached to the response their own affidavits and the affidavit of the attorney who represented them in the attempted sale to defendant. In plaintiff Mnuk's affidavit, in addition to attesting to some of the background facts set forth above, Mnuk attested that he did not know whether the subject property was a buildable lot; that he never told defendant that the subject property was a buildable lot; that defendant told him that defendant wanted to build on defendant's current lot, not that defendant wanted to build on the subject property; that defendant also told Mnuk that defendant wanted to buy the subject property to expand defendant's current lot; that Mnuk was never provided notice from defendant that defendant had applied and been rejected for a building permit for the subject property; and that defendant never terminated the contract, sent notice of termination, or communicated to Mnuk in any way that he was terminating the contract. Mnuk attached as exhibits to his affidavit, copies of his correspondence with the City regarding the wetland issue and whether the subject property was a buildable lot and a copy of the ERA report that had been provided to defendant. Plaintiff Raymond made statements in her affidavit that were similar to those of Mnuk—that Raymond never told defendant that the subject property was a buildable lot and that defendant never terminated the contract, sent notice of termination, or communicated a termination to Raymond. The attorney

that represented plaintiffs in the attempted sale to defendant attested in his affidavit that a title commitment would have been provided to defendant within the customary time limitations if defendant had agreed to close on the sale.

¶ 15        Defendant filed a written reply in support of his motion to dismiss and reasserted his prior arguments. In addition to some of his previous exhibits, defendant also attached to his reply a copy of plaintiff Mnuk's correspondence with the City (the same correspondence that had been attached to Mnuk's affidavit as an exhibit). By doing so, defendant sought to further establish that the City would not have issued a building permit for the subject property.

¶ 16        In October 2022, following full briefing on all of the issues presented, the trial court held a hearing on defendant's motion to dismiss. After listening to the oral arguments of the attorneys, the trial court found that defendant had properly terminated the parties' contract based upon the contract's contingency provisions. The trial court also found that the written contract was otherwise unenforceable because it failed to provide certain necessary information, such as a specific description of the property and specific closing and contingency dates. The trial court, therefore, granted defendant's motion to dismiss but did so without prejudice and allowed plaintiffs leave to replead their cause of action.

¶ 17        Plaintiffs subsequently filed their first amended complaint, which was very similar to their original complaint. In the first amended complaint, however, plaintiffs added some additional allegations and supporting documents to establish that the property description and closing date had been made more specific by the subsequent attorney modification. The original complaint did not include that information. Plaintiffs also added additional allegations to the first amended complaint to incorporate some of the arguments they had made in the prior motion to dismiss proceedings regarding the contract contingencies and the enforceability of the contract.

7

¶ 18        Defendant filed a section 2-619 motion to dismiss the first amended complaint and again asserted that he properly terminated the contract pursuant to the contract contingencies and that the contract was also voidable due to the parties' mutual mistake as to whether the subject property was a buildable lot. Adopting the position of the trial court from the prior motion proceedings, defendant asserted further in his current motion that the contract was unenforceable because it lacked specific dates for the occurrence of the contract contingencies. Plaintiffs filed a written response opposing the motion to dismiss, and defendant filed a written reply. In the motion filings, the parties made primarily the same arguments that they made in the prior motion proceedings and attached many of the same supporting documents.

¶ 19        The trial court held a hearing on the motion in April 2023. After listening to the oral arguments of the attorneys, the trial court again found that defendant had properly terminated the contract based upon the contract contingencies and that the contract was otherwise unenforceable due to the lack of necessary information (a specific description of the property and closing and contingency dates). The trial court, therefore, granted defendant's motion and dismissed plaintiffs' first amended complaint with prejudice. Plaintiffs appealed.

¶ 20                                    II. ANALYSIS

¶ 21        On appeal, plaintiffs argue that the trial court erred in granting defendant's section 2-619 motion to dismiss plaintiffs' first amended complaint. Plaintiffs assert that defendant's motion should not have been granted for three reasons. First, plaintiffs contend that contrary to the trial court's findings, the parties' contract contained all of the necessary information and was an enforceable contract, especially after the attorney modification occurred and a more specific property description and closing date were provided. Second, plaintiffs maintain, again contrary to the trial court's findings, that none of the contract contingencies relieved defendant from

8

having to perform the contract and purchase the property from plaintiffs. According to plaintiffs, the contract contingencies were waived and could not serve as a valid basis upon which to find that the contract had been terminated because defendant failed to properly exercise the contingencies and failed to properly terminate the contract pursuant to those contingencies. Third and finally, plaintiffs contend that contrary to the assertion made by defendant, the contract was not voidable or unenforceable due to mutual mistake because defendant failed to establish that the elements of mutual mistake were present in this case. Thus, for all of the reasons set forth,[1] plaintiffs ask that we reverse the trial court's grant of defendant's motion to dismiss and that we remand this case for further proceedings on plaintiffs' first amended complaint.

¶ 22 Defendant argues that the trial court's ruling was proper and should be upheld. Defendant disagrees with all of plaintiffs' assertions and contentions, and maintains that the trial court correctly granted the motion to dismiss because the pleadings and supporting documents in the motion proceedings established that the contract was lacking necessary information and was unenforceable, that defendant properly terminated the contract based upon the contract contingencies, and that the contract was also voidable due to the mutual mistake of the parties as to whether the subject property was a buildable lot. For those reasons, defendant asks that we affirm the trial court's grant of defendant's section 2-619 motion to dismiss plaintiffs' first amended complaint.

¶ 23 Section 2-619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2022); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The statute's purpose is to provide litigants

---

[1]As a secondary point to some of their contentions, plaintiffs also assert that at the very least, genuine issues of material fact existed that should have prevented the trial court from granting defendant's motion to dismiss. According to plaintiffs, those issues should have been decided by a jury because plaintiffs made a jury demand in this case.

with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter*, 207 Ill. 2d at 367; *Advocate Health & Hospitals Corp. v. Bank One*, *N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several grounds for which an involuntary dismissal may be granted. See 735 ILCS 5/2-619(a)(1) to (a)(9) (West 2022). Under subsection (a)(9), the subsection that applies in this case, a litigant may obtain an involuntary dismissal of a claim asserted against him if the claim is barred by other affirmative matter, which avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2022); *Van Meter*, 207 Ill. 2d at 367. An "affirmative matter" is something in the nature of a defense that negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. In ruling upon a section 2-619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* 367-68. A section 2-619 motion to dismiss should not be granted unless it is clearly apparent that no set of facts can be proven that would entitle the plaintiff to recovery. See *Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 98-99 (1993). On appeal, a dismissal pursuant to section 2-619 is reviewed *de novo*. *Van Meter*, 207 Ill. 2d at 368. When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of a section 2-619 motion to dismiss a complaint may be affirmed on any basis supported by the record. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 14.

¶ 24        Defendant's motion to dismiss in the present case was based, in part, upon defendant's alleged proper exercise of his right to terminate the contract pursuant to the soil test contingency.

The soil test contingency was a condition precedent in the parties' contract. A condition precedent is a condition that must be met—generally, an act that must be performed or an event that must occur—before a contract becomes effective or before one party to an existing contract is obligated to perform. See *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 32; *Carollo v. Irwin*, 2011 IL App (1st) 102765, ¶ 23, *overturned on other grounds due to legislative action*, 805 ILCS 180/10-10 (West 2020). Depending upon the facts of a particular case, the failure of a condition precedent in a contract may have one of two possible effects: (1) it may prevent the contract from forming; or (2) it may relieve a party from having to perform. See *Carollo*, 2011 IL App (1st) 102765, ¶ 23. In the instant case, however, there is no dispute that the soil test contingency applied only to whether defendant would be obligated to perform the contract and purchase the subject property. When a contract contains an express condition precedent, strict compliance with the condition precedent is required, and the contract does not become enforceable or effective until the act is performed or the event occurs. *Cathay Bank*, 2016 IL App (1st) 152783, ¶ 32; *Carollo*, 2011 IL App (1st) 102765, ¶ 25. If the condition precedent remains unsatisfied, the parties' obligations under the contract are at an end. *Carollo*, 2011 IL App (1st) 102765, ¶ 25. A court will enforce an express condition precedent regardless of whether doing so has the potential of causing a harsh result for the noncomplying party. *Cathay Bank*, 2016 IL App (1st) 152783, ¶ 32.

¶ 25    In the present case, after reviewing the pleadings and the motion filings relative to the motion to dismiss, we agree with the trial court and defendant that defendant properly terminated the contract pursuant to the soil test contingency. That particular contingency allowed defendant in this case to obtain a soil test on the subject property to determine if the property was a buildable lot and to terminate the contract if the results of the soil test were unsatisfactory to

11

defendant. To properly exercise the contingency, defendant had to comply with the contingency's two requirements: (1) he had to obtain a soil test and (2) he had to notify plaintiffs of his intent to terminate after receiving the soil test results. Defendant strictly complied with those two requirements here.

¶ 26      Although plaintiffs assert that defendant failed to obtain the type of soil test required by the contingency—a soil boring test—we do not agree. At best, the contract language for the soil test contingency was ambiguous in that the contingency referred to a "soil boring test" in the body of the contingency but referred only to a "soil test" in the contingency's heading and did not provide a definition of either term. The court in a section 2-619 proceeding, however, is allowed to interpret a contract because contract interpretation is a question of law. See *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 158 (1999) (indicating that because contract interpretation is a question of law for the court, an action may be dismissed under section 2-619 of the Code based upon the court's interpretation of the contract at issue). Upon doing so here, we find, contrary to plaintiffs' assertion, that defendant obtained a proper soil test as provided for in the soil test contingency. According to the contract language, the purpose of the soil test was to allow defendant "to obtain the necessary permits from the appropriate governmental authorities for the improvement contemplated by [defendant]," and the record in this case clearly shows that the soil test that defendant obtained was obtained for that purpose. We, therefore, conclude that defendant complied with the first requirement of the soil test contingency.

¶ 27      As for the second requirement of the soil test contingency—that defendant provide proper notice of termination of the contract to plaintiffs—we find that defendant complied with that

requirement as well. Upon receiving the unsatisfactory soil test results[2] and confirming those results with the engineering firm, defendant had his attorney promptly send the proposed alternatives letter to plaintiffs' attorney. The letter provided three possible alternatives for the parties' transaction—the first and second (renegotiation or repricing), which would have allowed the transaction to move forward, and the third, in which defendant's attorney stated that defendant "[would] accept a termination of the contract." Plaintiffs assert that the third alternative listed in the letter was not an expression of defendant's intent to terminate the contract but, rather, was merely an invitation to plaintiffs to do so if plaintiffs did not agree with either of the other two alternatives. That assertion, however, cannot be maintained because plaintiffs did not have the right in this case to terminate the contract pursuant to the soil test contingency, only defendant had that right. Thus, contrary to plaintiffs' assertion, the proposed alternatives letter was a proper notice of termination of the contract by defendant. Although the third alternative listed in the letter could have been written in any number of ways, the language that was used in the present case was sufficient to clearly disclose to a person of ordinary intelligence that defendant was terminating the contract pursuant to the soil test contingency if plaintiffs rejected the other two alternatives that were listed in the letter, which plaintiffs did in the present case. See *Paradise v. Augustana Hospital & Health Care Center*, 222 Ill. App. 3d 672, 676-77 (1991) (indicating that under Illinois law, sufficient notice to terminate a contract is notice that clearly discloses to a person of ordinary intelligence that the party that sent the notice

_____

[2]Plaintiffs assert on appeal that the trial court should not have considered the soil test report in making its ruling because the report was not supported by affidavit and because a sworn or certified copy of the report was not submitted. Plaintiffs' assertion in that regard, however, must be rejected because plaintiffs submitted a copy of the report to the trial court for consideration as an exhibit attached to plaintiff Mnuk's affidavit. See *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (stating that a party cannot complain about an error that the party induced the trial court to make or to which the party consented).

was intending to terminate the contract). We, therefore, conclude that defendant also satisfied the second requirement of the soil test contingency.

¶ 28 Because we have determined that defendant complied with both requirements of the soil test contingency, we find that the parties' contract in this case was lawfully terminated by defendant. The trial court, therefore, correctly granted on that basis defendant's motion to dismiss plaintiffs' first amended complaint for breach of contract against defendant. Having so concluded, we need not address the other contingencies contained in the parties' contract or the other grounds that have been asserted in support of or against the trial court's ruling.

¶ 29       III. CONCLUSION

¶ 30 For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

¶ 31 Affirmed.